UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Michael David Winters

     v.                                                     Civil No. 21-cv-864-LM
                                                            Opinion No. 2022 DNH 133 P

Kilolo Kijakazi,
Acting Commissioner of Social Security

**O R D E R**

Plaintiff Michael Winters brought this action seeking judicial review of the decision of the Acting Commissioner of the Social Security Administration denying his applications for disability insurance benefits and supplemental social security income under Titles II and XVI of the Social Security Act. Winters moves to reverse the Acting Commissioner's decision (doc. no. 6), and the Acting Commissioner moves to affirm (doc. no. 7). Winters argues that an Administrative Law Judge ("ALJ") erred by failing to account for his use of a cane in assessing his residual functional capacity. For the following reasons, the Acting Commissioner's decision is affirmed.

**STANDARD OF REVIEW**

In reviewing the final decision of the Commissioner under 42 U.S.C. § 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Sacilowski v. Saul, 959 F.3d 431, 437 (1st Cir. 2020). The court defers to the ALJ's factual findings as long as they are

supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (citation omitted). Rather, the court "must uphold the Commissioner's findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support her conclusion." Id. (citation and internal modifications omitted).

## DISABILITY ANALYSIS FRAMEWORK

The Social Security Administration's regulations set out a five-step process that ALJs must follow to evaluate whether a person is "disabled" under the Social Security Act—that is, unable to engage in any "substantial gainful activity." See 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1520.[1] The five steps are as follows:

- **Step One**: If the claimant is presently engaging in substantial gainful activity, he is not disabled. Id. § 404.1520(b).

- **Step Two**: If the claimant does not have any impairment or any combination of impairments that significantly limits his physical or mental ability to do basic work activities, he is not disabled because he lacks a "severe" impairment. Id. § 404.1520(c).

- **Step Three**: If any of the claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part

---

[1] Unless otherwise noted, the court will cite the regulations under Title II (disability insurance), 20 C.F.R. pt. 404, which are not materially different from those under Title XVI (supplemental income), 20 C.F.R. pt. 416, in the context of this case. See, e.g., Kimball v. Kijakazi, No. 21-cv-943-LM, 2022 WL 2702819, at *1 n. 1 (D.N.H. July 7, 2022).

2

> 404, Subpart P, Appendix 1, he is disabled—and the ALJ need not proceed to steps four and five. Id. § 404.1520(d).
>
> - **Step Four**: If the claimant's impairments do not prevent him from doing his past relevant work, then he is not disabled. Id. § 404.1520(e)-(f).
>
> - **Step Five**: If the claimant's impairments do not prevent him from doing other work that exists in the national economy, then he is not disabled. Id. § 404.1520(g).

At steps one through four, the claimant has the burden of proof. Sacilowski, 959 F.3d at 433-34. At step five, however, the Commissioner has the burden of proof. Id.

If the claimant meets his burden at the first two steps of the sequential analysis, but not at the third, the ALJ proceeds to steps four and five, which begin with a determination of the claimant's "residual functional capacity," i.e., a determination of what kind of things the claimant can and cannot do, mentally and physically. See 20 C.F.R. § 404.1545(a)(1). A person's residual functional capacity is an assessment of "the most" the claimant can do despite his limitations. Id. After the ALJ formulates the claimant's residual functional capacity, he compares that assessment against the demands of the claimant's past work (at step four) and against other jobs that exist in the national economy (at step five). Id. § 404.1520(e)-(g). If the claimant's residual functional capacity allows him to perform his past relevant work or work that exists in the national economy, the claimant is not disabled. See id. § 404.1520(a)(4)(iv)-(v), (e), (f).

## BACKGROUND[2]

Winters applied for disability insurance benefits and supplemental security income in November 2019.  Winters claimed a disability beginning May 16, 2015, alleging impairments including, among others, a neck injury, degenerative disc disease, shoulder pain, vertigo, and diabetes.  The Social Security Administration denied Winters's claims, and Winters requested reconsideration.  The Social Security Administration upheld the denial, and Winters then requested a hearing before an ALJ.  The ALJ held a hearing in early January 2021.[3]

During the hearing, Winters and a vocational expert testified.  Winters testified that he was 50 years old at the time of the hearing.  Winters had been a forklift operator for 15 years until he suffered a work-related neck injury in May 2015.  Among other symptoms of his impairments, Winters testified that he is only able to stand for 35 to 45 minutes with the help of a cane.  Administrative Record ("AR") at 53. Winters testified that he has been using a cane for about a year and a half.  Id.  He added that he "always" uses the cane because he has "no choice" and is "always dizzy."  Id. at 53-54.  Winters testified that a doctor prescribed the cane for him because he was falling when getting out of bed and when walking.  Id. at 54.  Winters testified that he can shower but it is "a struggle."  Id.  He uses a shower that has a railing for him to hold.  Winters testified that bending over to wash

---

[2] The court recounts in this order only the facts of Winters's extensive medical record that are most critical to the sole issue raised by Winters.

[3] The ALJ held the hearing by telephone with the assent of all parties because of the extraordinary circumstances presented by the COVID-19 pandemic.

himself "is very troublesome" and he has fallen at least five or six times in the shower. Id.

The ALJ issued an unfavorable decision on February 1, 2021. The ALJ found that Winters was not disabled from May 16, 2015, through the date of the decision. At step one, the ALJ found that Winters had not engaged in substantial gainful activity since the date of his claimed disability, May 16, 2015. At step two, the ALJ found that several of Winters's impairments were "severe," including degenerative disc disease, diabetes, vertigo, and others. But, at step three, the ALJ found that Winters's impairments were not of the kind listed in Appendix 1 that automatically qualify a person as disabled. Accordingly, the ALJ moved to steps four and five.

The ALJ, reviewing the record and Winters's testimony found that, considering Winters's impairments, Winters had the residual functional capacity to perform light work, as defined under 20 C.F.R. §§ 404.1567(b) and 416.967(b), except with the ability to occasionally climb ramps and stairs. The ALJ added numerous other limitations. Most notably, considering Winters's vertigo, the ALJ found that Winters must avoid all ladders, ropes, and scaffolds; that he can only occasionally bend, stoop, kneel, crouch, and crawl; that he can only occasionally balance, meaning that he must avoid narrow, slippery, or erratic moving surfaces; that he can frequently reach overhead bilaterally; and that he must avoid hazards including unprotected heights and dangerous machinery.[4]

---

[4] The ALJ also included several other restrictions related to Winters's social functioning that are not relevant to this appeal.

The ALJ found persuasive, and based the residual functional capacity on, the opinions of Drs. James Trice and Jonathan Jaffe—consultants who reviewed Winters's medical records but were not treating or examining providers.  AR at 35.  The ALJ found that both opinions were consistent with the medical evidence.  The ALJ acknowledged that additional treatment notes were entered into the record after their reviews, but he found that those notes did not show "any meaningful change or deterioration" in Winters's condition.  Id. at 36.[5]

The ALJ found that, generally, Winters's medically determinable impairments could reasonably be expected to cause the symptoms he alleged.  However, the ALJ found that Winters's statements about the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ."  Id. at 32.  The ALJ also found that statements from Winters's treating medical providers did not persuasively identify limitations beyond those enumerated in the residual functional capacity.

The ALJ did not specifically address Winters's use of a cane as it pertained to his residual functional capacity.  Rather, the ALJ found that Winters's medical history did not indicate he required specific limitations above those already found.  In reviewing the medical evidence supporting his findings, the ALJ noted some of the evidence related to Winters's use of a cane, specifically observing that Dr. Heidi Crusberg, a treating physician, wrote in January 2020 that Winters had "good

---

[5] The opinions indicate that Drs. Jaffe and Trice reviewed medical records through July 2020.  AR at 79, 97.

balance" even though he had to hold on to a table to rise from a seated position. Id. at 35. The ALJ noted that Dr. Crusberg prescribed Winters a cane at that time, but found that an April 2020 record indicated that Winters was not using the cane. The ALJ added that Dr. Crusberg again prescribed a cane to help Winters walk in September 2020, but medical records from the same time period showed that, while Winters "demonstrated increased sway with eyes closed," he was able to walk "in the hallway with his eyes closed and with head turns." Id.

After determining Winters's residual functional capacity, the ALJ found at step four that Winters was unable to perform his past work as a forklift operator. However, based on a vocational expert's opinion, the ALJ found that a person with Winters's residual functional capacity could perform jobs that existed in significant numbers in the national economy such as mail clerk, "marker," and router. Accordingly, based on his findings about Winters's residual functional capacity and the vocational expert's opinion, the ALJ found at step five that Winters was not disabled. See 20 C.F.R. § 404.1520(f).

## DISCUSSION

Winters appeals the ALJ's finding that he was not disabled. Specifically, Winters contends that the ALJ's residual functional capacity assessment that he can perform a "limited range of light work" is not supported by substantial evidence. Doc. no. 6-1 at 3. In particular, Winters argues that the ALJ failed to consider his need for a cane when walking. He criticizes the ALJ's decision for relying on the opinions of Drs. Trice and Jaffe, arguing that they did not consider his entire

7

medical record and that they did not make any reference to his need for a cane to walk in their opinions. Winters points to his own testimony that he required a cane to walk.

The Acting Commissioner argues that the ALJ did not err by relying on the opinions of Drs. Trice and Jaffe. The Acting Commissioner asserts that the ALJ accounted for Winters's vertigo, and, effectively, his use of a cane, by adding restrictions to Winters's residual functional capacity for the symptoms caused by his vertigo. Finally, the Acting Commissioner asserts that Winters fails to make any effort to demonstrate prejudice because the three jobs Winters could perform do not require climbing or balancing, so an additional limitation for walking with a cane would not exclude him from performing those jobs.

As noted, a person's residual functional capacity is an assessment of "the most" the claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a)(1). In formulating a residual functional capacity, the ALJ must consider "all of the relevant medical and other evidence" and all of the claimant's "medically determinable impairments" about which the ALJ is aware. Id. § 404.1545(a)(2), (a)(3). "In determining a claimant's [residual functional capacity], an ALJ must consider a claimant's subjective allegations of functional limitations, but she is not required to take those allegations at face value and may reject them where they are unsupported by the medical evidence, treatment history, and activities of daily living." E.g., Richards v. Kijakazi, 554 F. Supp. 3d 242, 252 (D. Mass. 2021); Richardson v. Saul, 565 F. Supp. 3d 154, 170 (D.N.H. 2021).

The ALJ's determination of Winters's residual functional capacity is supported by substantial evidence. In formulating Winters's residual functional capacity, the ALJ relied on the medical evidence, including Winters's treatment history and the opinions of Drs. Jaffe and Trice, as well as on Winters's statements about his daily activities. That evidence showed numerous impairments and symptoms, which the ALJ noted and accounted for in his residual functional capacity assessment.

Winters contends that the ALJ erred by relying on the opinions of Drs. Jaffe and Trice, asserting that they only reviewed a portion of his medical record.[6] Although there are some medical records that Drs. Jaffe and Trice did not review, Winters fails to identify how the later medical records undermine the ALJ's reliance on their opinions. See Robar v. Astrue, No. 10-288-PB, 2011 WL 2729197, at *8 (D.N.H. July 13, 2011) (rejecting argument that ALJ erred by relying on consultants who did not review entire medical record because claimant did not show "what later medical evidence undermine[d]" the consultants' opinions). Indeed, Drs. Jaffe and Trice reviewed the evidence that Winters had been prescribed a cane and neither included an additional restriction for walking with a cane. Furthermore, in evaluating their opinions, the ALJ noted that Drs. Jaffe and Trice had not reviewed some recent treatment notes but found that those treatment notes did not indicate a material change in Winters's condition.

---

[6] Winters does not argue that the ALJ erred by giving the opinions of Drs. Jaffe and Trice greater persuasive value than any opinion of a treating medical provider.

9

And, although Winters faults the ALJ for failing to add additional limitations despite his testimony that he always needs to use a cane, the ALJ was not required to rely on Winters's testimony over the medical opinions or other medical evidence. E.g., Richards, 554 F. Supp. 3d at 252 (D. Mass. 2021); Smith v. Berryhill, 370 F. Supp. 3d 282, 290 (D. Mass. 2019) ("It is left to an [ALJ] to resolve conflicts in evidence and, where such determinations are supported by the record, they are to be affirmed."). Here, the ALJ recounted in detail the medical records and opinions on which he relied, as well as the other circumstances that he credited in weighing the evidence and finding that Winters's residual functional capacity need not include a specific limitation for usage of a cane. In particular, the ALJ pointed to several medical records and treatment notes from after Winters received the cane prescription indicating that Winters was able to walk and balance himself.

## CONCLUSION

The ALJ's findings are supported by substantial evidence. The decision of the Acting Commissioner denying Winters's application for disability insurance benefits and supplemental social security income is affirmed. Winters's motion to reverse (doc. no. 6) is denied, and the Acting Commissioner's motion to affirm (doc. no. 7) is granted. The clerk of court shall enter judgment and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 24, 2022
cc:   Counsel of Record